MR. VICTOR DE LA CRUZ # V-80363
CALIFORNIA STATE PRISON-CORCORAN
4001 KING AVENUE
P.O. BOX 3481
CORCORAN CA 93212

VICTOR DE LA CRUZ
PLAINTIFF / PROSE.

FILED
OCT 23 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ______ DEPUTY CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION.

VICTOR DE LA CRUZ,
PLAINTIFF,
V.
WARDEN, G. GIPSON; CHIEF DEPUTY WARDEN, G. SANTOR; ASSOCIATE WARDEN(S), M. SEXTON; S. JOHNSON AND R.S. LAMBERT; CORRECTIONAL CAPTAIN(S), R. BROOMFIELD AND C. MORENO; CORRECTIONAL LIEUTENANT(S), C. MUÑOZ; J. CALLOW AND A. CRUZ; CORRECTIONAL SERGEANT(S), I. BUENO; D.B. HERNANDEZ; A. PETERSON; K. WELCH AND FIRST WATCH SERGEANT(S), JOHN DOE(S); SECOND WATCH SERGEANT, JOHN DOE; THIRD WATCH SERGEANT(S), JOHN DOE(S); CORRECTIONAL OFFICER(S) A. MENDEZ; T. CALDWELL; S. TOMLIN; .MALDONADO; R. BERGE; .ESPINOZA AND FIRST WATCH CORRECTIONAL OFFICER(S) JOHN DOE(S); THIRD WATCH CORRECTIONAL OFFICER(S), JOHN DOE(S),
DEFENDANTS.

CASE NO. 1:14-CV-02012-DLB (PC)

PLAINTIFF'S VERIFIED AMENDED CIVIL RIGHT ACT, COMPLAINT PURSUANT TO 42 U.S.C. §1983 AND CALIFORNIA TORT CLAIMS ACT, COMPLAINT PURSUANT TO GOV. CODE §§ 844.6; 905.2; 911.2 AND 945.4.

JURY TRIAL DEMAND, PURSUANT TO FED. R. CIV. P., RULE 38.

RECEIVED
OCT 23 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ______ DEPUTY CLERK

///
///

# I.

## JURISDICTION, VENUE AND PARTIES.

1. JURISDICTION IS PROPER IN THIS COURT, PURSUANT TO 28 U.S.C. §§1331, 1343 (a)(3), 1367, 2201 (a), 2202, 2283 AND 2284 (b); PURSUANT TO THE RESTATEMENT (SECOND) OF TORTS §314A (4); PURSUANT TO THE CALIFORNIA TORT CLAIMS ACT, GOV. CODE §911.2 AND PURSUANT TO 42 U.S.C. §1983.

2. VENUE IS PROPER IN THIS COURT, PURSUANT TO 28 U.S.C. §§ 84 (b) AND 1391 (b), WHERE AS, DEFENDANTS ("COLLECTIVELY-DEFENDANTS") WERE CITIZENS OF THE UNITED STATES, RESIDING IN THE STATE OF CALIFORNIA. A SUBSTANTIAL PART OF THE EVENTS AND / OR OMISSIONS TO THE ALLEGED CLAIMS OCCURRED AT CALIFORNIA STATE PRISON - CORCORAN, WHICH IS IN THIS JUDICIAL DISTRICT.

3. PLAINTIFF VICTOR DE LA CRUZ ("PLAINTIFF") IS A UNITED STATES CITIZEN, RISIDING AS A STATE PRISONER, IN THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR"). PLAINTIFF IS / WAS AT ALL TIMES, MATERIAL IN THIS COMPLAINT, CONFINED IN THE SECURITY HOUSING UNIT "S.H.U.", AT CALIFORNIA STATE PRISON-CORCORAN "CSP-COR" WHICH IS LOCATED AT 4001 KING AVENUE, IN THE CITY OF CORCORAN, IN KINGS COUNTY CALIFORNIA.

4. DEFENDANT(S) WARDEN ("W"), C. GIPSON ("GIPSON"); CHIEF DEPUTY WARDEN ("CDW") G. SANTOR ("SANTOR"); ASSOCIATE WARDEN ("A.W."), M. SEXTON ("SEXTON"); ASSOCIATE WARDEN ("A.W.") S. JOHNSON ("JOHNSON"); ASSOCIATE WARDEN ("A.W."), R.S. LAMBERT ("LAMBERT"); CORRECTIONAL CAPTAIN ("CAPT."), R. BROOMFIELD ("BROOMFIELD"); CORRECTIONAL CAPTAIN ("CAPT."), C. MORENO ("MORENO"); CORRECTIONAL LIEUTENANT ("L.T."), C. MUÑOZ ("MUÑOZ"); CORRECTIONAL LIEUTENANT ("L.T."), J. CALLOW ("CALLOW"); CORRECTIONAL LIEUTENANT ("L.T.") A. CRUZ ("CRUZ"); CORRECTIONAL SERGEANT ("SGT") I. BUENO ("BUENO"); CORRECTIONAL SERGEANT ("SGT") D.B. HERNANDEZ ("HERNANDEZ"); CORRECTIONAL SERGEANT ("SGT") A. PETERSON ("PETERSON"); CORRECTIONAL SERGEANT ("SGT"), K. WELCH ("WELCH"); FIRST WATCH ("1/w"), CORRECTIONAL SERGEANT(S) ("SGT(S)), JOHN DOE(S) ("DOE(S)"); SECOND WATCH ("2/w") CORRECTIONAL SERGEANT ("SGT"), JOHN DOE (DOE"); THIRD WATCH ("3/w").

CORRECTIONAL SERGEANT ("SGT"), JOHN DOE ("DOE"); CORRECTIONAL OFFICER ("C/O"), A. MENDEZ, ("MENDEZ"); CORRECTIONAL OFFICER ("C/O") T. CALDWELL ("CALDWELL"); CORRECTIONAL OFFICER ("C/O"), S. TOMLIN ("TOMLIN"); CORRECTIONAL OFFICER ("C/O"), MALDONADO ("MALDONADO"); CORRECTIONAL OFFICER ("C/O"), R. BERGE ("BERGE"); CORRECTIONAL OFFICER ("C/O"), . ESPINOZA ("ESPINOZA"); FIRST WATCH ("1/W") CORRECTIONAL OFFICER(S) ("C/O(S)") JOHN DOE(S) ("DOE(S)"); THIRD WATCH ("3/W"), CORRECTIONAL OFFICER(S) ("C/O(S)"), JOHN DOE(S) ("DOE(S)"). WERE, EMPLOYED BY THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR"), ASSIGNED TO CALIFORNIA STATE PRISON-CORCORAN ("CSP-COR"). DEFENDANTS WERE AT ALL TIMES MATERIAL IN THIS COMPLAINT. ACTING IN THEIR OFFICIAL CAPACITY(IES) AS; DULY APPOINTED, WARDEN(S) / CHIEF DEPUTY WARDEN(S) / ASSOCIATE WARDEN(S) / CORRECTIONAL CAPTAIN(S) / CORRECTIONAL LIEUTENANT(S) CORRECTIONAL SERGEANT(S) / CORRECTIONAL OFFICER(S). DEFENDANTS ARE SUED, HOWEVER ONLY IN THEIR INDIVIDUAL CAPACITY(IES) FOR MONETARY DAMAGES.

II.

EXHAUSTION

5. FOR THE PURPOSE OF 42 U.S.C. § 1997e(a), PLAINTIFF HAS EXHAUSTED ALL OF HIS "AVAILABLE ADMINISTRATIVE REMEDIES".

6. PLAINTIFF HAS ALSO PRESENTED HIS CLAIM TO THE CALIFORNIA VICTIM COMPENSATION AND GOVERNMENT CLAIM BOARD (FORMERLY KNOWN AS "BOARD OF CONTROL").

III.

NATURE OF THE CASE.

7. PLAINTIFF SEEKS INJUNCTIVE RELIEF; COMPENSATORY, PRESUMED, PUNITIVE, NOMINAL AND SPECIAL DAMAGES FOR THE INTENTIONAL INFLICTION OF EMOTIONAL / MENTAL DISTRESS; AND A JUDGEMENT DECLARING PLAINTIFF'S RIGHTS UNDER AMENDMENT 8 TO THE UNITED STATES CONSTITUTION; UNDER SECTION 17 TO THE CALIFORNIA CONSTITUTION WERE VIOLATED AND BREACH UNDER GOVERNMENT CODE §§ 844.6 AND 905.2 OF THE CALIFORNIA TORT CLAIMS ACT.

///

## IV.

## GENERAL ALLEGATIONS

8. PLAINTIFF ALLEGES AND INCORPORATES BY REFERENCE IN PARAGRAPHS 1 TROUGH 7. AS IF FULLY SET FORTH HEREIN.

9. AT ALL TIMES, MATERIAL IN THIS COMPLAINT "DEFENDANTS" WERE "PERSONS" FOR THE PURPOSE OF 42 U.S.C. §1983 AND GOVERNMENT CODE § 844.6 AND 905.2 OF THE CALIFORNIA TORT CLAIMS ACT; RESTATEMENT (SECOND) OF TORTS § 314A(4). "ACTED UNDER COLOR OF LAW" AND "FAILURE TO ACT" VIOLATED PLAINTIFFS CONSTITUTIONAL RIGHTS AND BREACHED A DUTY OF CARE TO PROTECT FROM NEGLECT HARM / INJURY.

10. THAT IS, UNDER STATE AND FEDERAL LAWS, ORDINANCES, CUSTOMS AND RULES USAGES, REGULATIONS, POLICIES AND PROCEDURES.

11. DEFENDANT'S "COLLECTIVELY-DEFENDANTS" TROUGH THEIR "RECKLESS AND WANTON DISREGARD" FOR THE LAW AND TROUGH THEIR "DELIBERATE INDIFERENCE AND GROSS NEGLIGENCE" TO THE SERIOUS UNAVOIDABLE RISK AND HARM / INJURIES TO PLAINTIFFS HEALTH, SUBJECTED HIM TO CRUEL AND UNUSUAL PUNISHMENT AND NEGLECTFUL PAIN.

12. DEFENDANTS EACH AND EVERYONE OF THEM HAD A DUTY / RESPONSIBILITY TO PROTECT PLAINTIFF FROM EACH OTHER OMISSIONS AND UNLAWFULL ACTIONS. YET EACH AND EVERY ONE OF THEM REFUSE TO PERFORM SUCH A DUTY / RESPONSIBILITY.

13. AS A PROXIMATE CAUSE OF THE DEFENDANT'S ACTIONS AND INACTIONS. PLAINTIFF SUFFERED A VIOLATION TO HIS CONSTITUTIONAL RIGHTS UNDER THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION. AND NEGLECT OF DUTIES UNDER CALIFORNIA TORT CLAIMS ACT. RESULTING IN AMONGST OTHER THINGS. ACTUAL DAMAGE, HOSTILE ENVIROMENT, HUMILIATION, FEAR OF CONTRACTING DISEASES (i.e. RESULTING FROM COMING IN DIRECT CONTACT WITH FIRE-HOSE PERVASIVE WATER CONTAMINATED WITH RUST, MOLD AND CONTEMPORANEOSLY WITH FLOOR DEBRIES, FLOOR DRAIN, RAW SEWAGE, ECT.) AND ONGOING PHYSICAL PAIN AND MENTAL / EMOTIONAL DISTRESS AFFECTING MY EVERYDAY ACTIVITIES.

14. THIS CASE IS COMPLEX AND EXCEPTIONAL WHERE AS ITS COMPOSED OF TWO PARTS AND THERE WILL BE MORE THAN ONE HUNDRED (100) POTENTIAL MATERIAL WITNESSES CALLED UPON TO TESTIFY.

# V.

## FACTUAL ALLEGATIONS

CLAIM NO. 1: DELIBERATE INDIFFERENCE TOWARDS CONDITIONS OF CONFINEMENT IN VIOLATION OF THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

15. BETWEEN JULY 8, 2013 AND AUGUST 12, 2013, DEFENDANTS GIPSON, SANTOR SEXTON, JOHNSON, LAMBERT, BROOMFIELD, MORENO, MUÑOZ, CALLOW, CRUZ, BUENO, HERNANDEZ, WELCH, PETERSON, 1/W-SGT'S-DOE'S, 2/W-SGT-DOE, 3/W-SGT'S-DOE'S, MENDEZ, CALDWELL, TOMLIN, MALDONADO, BERGE, ESPINOZA, 1/W-C/O'S-DOE'S, 3/W-C/O'S DOE'S, KNEW I WAS IN CELL NUMBER 38 ON THE TOP TIER (i.e. WHICH I HAD TO GO UP AND A STAIRWAY IN ORDER TO GO IN OR OUT THE BUILDING) IN THE FACILITY 4A, BUILDING 2-RIGHT SIDE ("4A-2R #38"); THAT THE MAYORITY of the SECURITY HOUSING UNIT ("S.H.U.") AT CALIFORNIA STATE PRISON-CORCORAN "CSP-COR" WERE ON HUNGER STRIKE (i.e. EXERCISING THE 1ST AMENDMENT RIGHT TO A PEACEFULLY ASSEMBLE AND PETITION TO THE GOVERNMENT REDRESS OF GRIEVANCESS) WHICH "4A-2R" WAS MADE INTO A BUILDING MOSTLY FOR PRISONERS ON HUNGER STRIKE OVER 20 DAYS ALL WHOM WERE FRAIL, WEAK AND HIGHLY IN RISK OF CONTRACTING DISEASES AND INFECTIONS, MYSELF INCLUDED.

16. BETWEEN AUGUST 9, 2013 AND AUGUST 11, 2013 DEFENDANTS, GIPSON, SANTOR SEXTON, JOHNSON, LAMBERT, BROOMFIELD, MORENO, MUÑOZ, CALLOW, CRUZ, BUENO, HERNANDEZ, WELCH, PETERSON, 1/W-SGT'S-DOE'S, 2/W-SGT-DOE, 3/W-SGT'S-DOE'S, MENDEZ, CALDWELL TOMLIN, MALDONADO, BERGE, ESPINOZA, 1/W-C/O'S-DOE'S, 3/W-C/O'S-DOE'S, KNEW MOST PRISONERS IN "4A-2R" BEGAN TO EAT; THAT INVOLVED CONSTANT MOVEMENT (e.g. TAKING PRISONERS TO VISIT; HOSPITAL FOR RE-FEEDING EVALUATION AND PASSING OUT FOOD) AND TROUGH ACTUAL OR CONSTRUCTIVE NOTICE FROM THE WARDEN TO HER SUBORDINATES (i.e. "CDW", "AW(S)", "CAPT(S)", "LT(S)", "SGT(S)" "C.O.(S)") ORDERED TO WATER-HOSE THE DAY ROOM(S) WITH THE "EMERGENCY FIRE HOSE" WITHOUT BEING A FIRE AND VIOLATING PROPER SANITATION. RESULTING

IN A SUFFICIENTLY SERIOUS HAZARDOUS, SMALL AND BIG PUDDLES OF PERVASIVE WATER CONTAMINATED WITH RUST AND MOLD THAT CAME OUT THE FIRE-HOSE AND FLOUR DEBRIS, FLOUR DRAINS, RAW SEWAGE ETC.. TROUGHT OUT THE ENTIRE DAYROOM AND INSIDE THE BOTTOM TIER CELLS. IT WAS LEFT WITHOUT SWEEPING, MOPPING WITH GERMA-CIDE AND AIR DRYED, DELIBERATE INDIFFRENCE TO THE INMATES HEALTH OR SAFETY FOR TWO DAYS AND ONE NIGHT. KNOWLINGLY THAT ALL PRISONERS MUST BE ESCORTED TROUGH THE PUDDLES AND HAND-CUFFED BEHIND THE BACK WITH NO BALANCE IF WE WERE TO SLIP AND FALL.

17. ON AUGUST 10, 2013 DEFENDANT "MENDEZ" AND "CALDWELL" WATER-HOSED "4A-2R" DAYROOM(S). AS THEY TURNED ON THE WATER, RUST AND MOLD CAME OUT THE HOSE. CONTEMPORANEOSLY WITH THE FLOUR DEBRIS, ETC... SMALL AND BIG PUDDLES WERE FORMED. PRISONERS ASSIGNED TO THE BOTTOM TIER STARTED TO COMPLAIN DUE TO BIG BURST OF WATER GOING INSIDE THEIR CELL. TO WHICH "CALDWELL" REPLIED "STOP COMPLAINING"; "SHUT-UP" AND "THE WARDEN TOLD US TO DO THIS". THE DEFENDANT "SGT BUENO" CAME INSIDE THE SECTION TO SPEAK WITH CALDWELL THEN LEFT TO ATTEND OTHER MATTERS WITHOUT ADEQUATE CLEANING AND LEFT ALL THE PUDDLES THERE, TROUGH OUT 2/W-SHIFT EMPLOYEES (6:AM-2:PM); 3/W-SHIFT EMPLOYEES (2:PM-10:PM); 1/W-SHIFT EMPLOYEES (10:PM-6:AM) AND AGAIN 2/W-SHIFT EMPLOYEES (2:PM-10:PM). UNTIL MY INJURY TRANSPIRED, IS WHEN ALL THE PUDDLES WERE CLEANED AND DRIED BEFORE FURTHER MOVEMENT OCCURED.

18. DEFENDANT "W" GIBSON IS THE ONE WHO GAVE THE ORDER TO HER SUBORDINATES, TO UTILIZE THE "EMERGENCY FIRE HOSE" TO WATER DOWN THE DAY ROOM, NOT FOLLOWING ADEQUATE SANITATION PROCEDURE. DELIBERATELY INDIFFRENT TO THE PRISONERS HEALTH OR SAFETY. DEFENDANT HAD NO REASONABLE JUSTIFICATION TO GIVE SUCH AN ORDER. SHE WAS AWARE THAT EVERYDAY ONE OR TWO PRISONERS WERE GOING "MAN DOWN" (i.e. ASKING TO GO TO THE HOSPITAL OR SEEN BY A DOCTOR) TO WHICH THE PRISONER MUST BE ESCORTED TROUGH THE DAYROOM NOR DID SHE TAKE ADEQUATE STEPS IN GIVING AN ORDER FOR HER SUBORDINATES

TO RESPOND REASONABLY, SUCH AS PROPER SANITATION AND AIR DRYING THE FLOOR BEFORE ANY MOVEMENT. ALTHOUGH SHE HAD THE AUTHORITY, POSSITION AND DUTY TO DO SO.

19. DEFENDANT "CDW" SANTOR IS RESPONSIBLE FOR THE "S.H.U." AND CUSTODY HEALTH OPERATIONS. AS CHAIN OF COMMAND GOES, HE GAVE THE WARDENS ORDERS TO HIS SUBORDINATES; KNOWINGLY THAT THE "EMERGENCY FIRE-HOSE" IS NOT FOR SANITATION PURPOSES, BUT RATHER HAZARDOUS TO CUSTODY HEALTH. BEING AWARE OF DOCUMENTED DAILY MOVEMENT OF "MAN DOWNS". HE KNEW OF A SUBSTANTIAL RISK TO PRISONERS' HEALTH OR SAFETY, BUT DID NOT RESPOND REASONABLY. ALTHOUGH HE HAD THE AUTHORITY, POSSITION AND DUTY TO DO SO.

20. DEFENDANT'S "A.W.(S)": JOHNSON; LAMBERT; SEXTON ARE RESPONSIBLE FOR PLANNING, ORGANIZING, DIRECTION AND EVALUATION OF THE CUSTODY AND CLASSIFICATION PROGRAM IN THE DESIGNATED FACILITY, THEY ENSURE COMPLIANCE WITH DEPARTMENTAL RULES, REGULATIONS AND POLICIES. AS CHAIN OF COMMAND GOES, HE GAVE THE WARDENS ORDERS TO HIS SUBORDINATES, KNOWINGLY THAT BY ALLOWING THE USAGE OF THE "EMERGENCY FIRE-HOSE" TO WATER THE DAYROOM. THEY CONDONE THE VIOLATION OF RULES, REGULATIONS AND POLICIES ON PROPER PROCEDURE. IT WAS OBVIOUS THAT THEY WERE SUBJECTIVELY AWARE OF IT, INSPITE OF THE RISK, THEY ALLOWED IT. THEY DIDN'T ADVISE TO THE SUBORDINATES, TO PREVENT ALL MOVEMENT UNTIL PROPER CLEANING OF ALL THE PUDDLES; AFTER THEY UNPROPERLY USED THE HOSE. ALTHOUGH THEY HAD THEY AUTHORITY, POSSITION AND DUTY TO DO SO.

21. DEFENDANTS "CAPT(S)" BROOMFIELD; MORENO, ARE RESPONSIBLE TO EXECUTE WARDENS ORDERS. BY FOLLOWING ORDERS IN USING THE EMERGENCY FIRE-HOSE TO "CLEAN" THE DAYROOM WAS A VERY OBVIOUS AND BLATANT CIRCUMSTANCE INDICATING THAT THEY KNEW A SUBSTANTIAL RISK OF SERIOUS HARM EXISTED, WHEN IT WAS DOCUMENTED OF FREQUENT MOVEMENT IN EACH BUILDING. AND DID NOT RESPOND REASONABLY, ALTHOUGH THEY HAD THE AUTHORITY, POSSITION AND DUTY TO DO SO.

22. DEFENDANT'S "LT'S" MUNOZ, CALLOW, CRUZ WERE AWARE OF THE CONSTANT PRISONER MOVEMENT, AND YET AUTHORIZE THE USE OF THE "EMERGENCY FIRE-HOSE" TO WATER HOSE THE DAY ROOMS, THIS KNOWING THE SUBSTANTIAL RISK OF SERIOUS HARM. THEY DID NOT HAVE A REASONABLE JUSTIFICATION TO ALLOW THE USE OF THE FIRE-HOSE TO "CLEAN" DAY ROOM'S AND DID NOT RESPOND REASONABLY, ALTHOUGH THEY HAD THE AUTHORITY, POSSITION AND DUTY TO DO SO.

23. DEFENDANT'S "SGT'S" BUENO, HERNANDEZ, PETERSON, 2/W-SGT-DOE, IN "4A-2 BLOCK" WHOM SUPERVISE THE 2/W-SHIFT-C/O'S WHOM INSTRUCTED THE 2/W-SHIFT-C/O'S WHAT TO DO AND DIRECTED THE WARDENS ORDERS TO USE THE HOSE AND WATER DOWN THE DAY ROOM WITH AN UNAUTHORIZE PROCEDURE. THEY WERE AWARE OF THE CONSTANT "MANDOWNS" AND THE OBJECTIVE MAGNITUDE OF THE RISK, BY WITNESSING THE SMALL AND BIG PUDDLES. THEY HAD NO REASONABLE JUSTIFICATION FOR HOSING THE DAY ROOM AND IN SPITE OF THE RISK THEY DID NOT PROPERLY ORDERED THE 2/W-SHIFT-C/O'S TO SANITAZE AND AIR DRY THE PUDDLES. ALTHOUGHT EACH AND EVERYONE OF THEM HAD THE AUTHORITY, POSSITION AND DUTY TO DO SO.

24. DEFENDANT'S, MENDEZ, CALDWELL, TOMLIN, BERGE, ESPINOZA, WELCH (DURING THIS TIME "K. WELCH" WAS NOT YET A "SGT"), 2/W-SHIFT C/O'S WERE THE "FLOOR STAFF" (i.e... ATTEND TO PRISONERS BASIC NEEDS, PASS OUT FOOD, ESCORT PRISONERS HAND-CUFF, ETC...) RESPONSIBLE FOR USING THE FIRE HOSE, IN ADVERSE TO PROTOCOL AND FOR ALLOWING THE USE OF AN UNAUTHORIZE PROCEDURE. WORSEN BY THE FACT, THE PUDDLES WERE LEFT FOR TWO DAYS AND ONE NIGHT. A VERY OBVIOUS AND BLATANT CIRCUMSTACES INDICATING THEY KNEW A SUBSTANTIAL RISK OF SERIOUS HARM EXISTED. THEY WERE AWARE OF THE PRISONERS CALLAPSING IN THEIR CELLS THAT REQUIRED TO BE TAKEN OUT IN A "GURNEY", WHILE OTHERS CALLAPSING WHILE BEING ESCORTED AND YET DID NOT RESPOND REASONABLY TO ABATE THE RISK OF HARM, UNTIL AFTER MY INJURY. ALTHOUGH EACH AND EVERY ONE OF THEM HAD THE AUTHORITY,

POSSITION AND DUTY TO DO SO.

25. DEFENDANT MALDONADO, WAS A 2/W-SHIFT-C/O ASSIGNED TO THE "CONTROLTOWER" (i.e. C/O'S WHOM OPEN CELL DOORS, SECTION DOORS SIDE DOORS AND BUILDING DOORS, FROM THE BUILDING CONTROL TOWER) WAS RESPONSIBLE FOR OPENING CELL DOORS FOR PRISONER TO BE ESCORTED OUT THE SECTION TROUGH THE PUDDLES, WHILE IT WAS OBVIOUS INJURIES WERE FORESEEABLE FOR PRISONERS OR STAFF. HE HAD NO REASONABLE JUSTIFICATION IN ALLOWING ESCORTS WHILE THE PUDDLES WERE PERVASIVE. FOR TWO DAYS. HE DID NOT RESPOND REASONABLY, UNTIL MY INJURY. ALTHOUGH HE HAD THE AUTHORITY, POSSITION AND DUTY TO DO SO.

26. DEFENDANT'S 3/W-C/O'S-DOE'S, 3/W-SHIFT-C/O'S WERE THE "FLOOR STAFF" THEY WERE AWARE OF THE OBVIOUS PUDDLES THAT WERE UNAVOIDABLE THREAT TO THE SAFETY OF PRISONER OR STAFF STEPING TROUGH THE PUDDLES. THEY HAD NO REASONABLE JUSTIFICATION, NOT TO SANITIZE AND DRY THE DAYROOMS. NOT RESPONDING REASONABLY UNDER PROCEDURE TO ABATE THE RISK OF HARM, ALTHOUGH THEY HAD THE AUTHORITY, POSSISION AND DUTY TO DO SO.

27.) DEFENDANT "3/W-SGT-DOE, 3/W-SHIFT-SGT. IS THE SUPERVISOR, MAKES SURE EVERYTHING IN HIS BLOCK IS SAFE AND ACCORDING TO PROTOCOL. HOWEVER ON THIS DAY THE DAYROOM WERE PUDDLES THAT OBVIOUS INJURIES WERE FORESEEABLE AND NO REASONABLE JUSTIFICATION, NOT TO ORDER HIS SUBORDINATES TO SANITIZE AND DRY THE PUDDLES THAT CAUSED A VISABLE THREAT. NOT RESPONDING REASONABLY UNDER PROCEDURE TO ABATE THE RISK OF HARM. ALTHOUGH THEY HAD THE AUTHORITY, POSSISION AND DUTY TO DO SO.

28. DEFENDANT(S) 1/W-C/O'(S)-DOE'(S), 1/W-SHIFT-C/O'(S) WERE

THE "FLOOR STAFF" THEY WERE AWARE OF THE OBVIOUS PUDDLES THAT WERE UNAVOIDABLE THREAT TO THE SAFETY OF PRISONERS AND STAFF "1/W-SHIFT" RARELY HAVE MOVEMENT. THEREFORE WAS NO REASONABLE JUSTIFICATION, NOT TO SANITIZE AND DRY THE PUDDLES DURING THEIR SHIFT. NOT RESPONDING REASONABLY UNDER PROCEDURE TO ABATE THE RISK OF HARM ALTHOUGH THEY HAD THE AUTHORITY, POSSISION AND DUTY TO DO SO.

29. DEFENDANT 1/W-C/O-DOE, 1/W-SHIFT-C/O ASSIGNED TO THE "CONTROL TOWER" WAS RESPONSIBLE IN OPENING SECTION DOORS WHILE IT WAS OBVIOUS, INJURIES WERE FORESEEABLE, HE HAD NO REASONABLE JUSTIFICATION IN ALLOWING THE PUDDLES TO PERVADE DURING HIS SHIFT. NOT RESPONDING REASONABLY BEFORE MY INJURY THE NEXT MORNING. ALTHOUGH HE HAD THE AUTHORITY, POSSISION AND DUTY TO DO SO.

30. DEFENDANT 1/W-SGT-DOE, 1/W-SHIFT-SGT IS THE SUPERVISOR OF "4A-2 block" MAKES SURE EVERYTHING IS ACCORDING TO PROCEDURE ON THIS NIGHT THE DAYROOMS WERE FULL OF PUDDLES. AN OBVIOUS INJURIES WERE FORESEEABLE THERE WAS NO REASONABLE JUSTIFICATION, NOT TO ORDER HIS SUBORDINATES TO SANITIZE AND DRY THE PUDDLES THAT CAUSED A VISABLE THREAT, WHILE THERE WAS NO MOVEMENT. NOT RESPONDING REASONABLY UNDER PROCEDURE TO ABATE THE RISK OF HARM. ALTHOUGH HE HAD THE AUTHORITY, POSSISION AND DUTY TO DO SO.

31. ON AUGUST 11 2013, I WAS ESCORTED CUFFED BEHIND MY BACK, BY "MENDEZ" AND "CALDWELL", TO VISIT. GOING DOWN THE STAIRS AT THE END OF THE STAIRWAY, LAID AN UNAVOIDABLE LARGE PUDDLE OF WATER. I STEPED ON TO THE PUDDLE WITH BOTH DEFENDANTS, I SLIPED BACKWARDS AND SLAMED ON MY LEFT ARM, LOWERBACK, WRISTS

AND HIT THE FLOOR WITH THE BACK OF MY HEAD, AN INCH AWAY MY HEAD HITTING THE LAST STEP IN THE STAIRCASE. I COULDNT BALANCE MYSELF WITH MY HANDS CUFFED. I LAID DAZED, SHORTNESS OF BREATH IN AN EXCRUCIATING AND DEBILITATING PAIN, SOAKED WITH CONTAMINATED WATER, TRYING TO SIT AND GET ON MY FEET. AS I WAS ESCORTED OUT THE SECTION DOOR "CALDWELL" STATED "THE WARDEN TOLD US TO DO THIS" AND "WELCH" ALSO STATED "THAT could HAVE BEEN US" AND "I HEARD A LOUD BANG AND I WAS IN THE OFFICE WITH THE DOOR CLOSE".

CLAIM NO. 2 — WANTON AND GROSS NEGLIGENCE FAILURE TO ACT RESULTING IN AN INJURY FROM NEGLECT OF DUTIES. A BREACH OF THE RESTATEMENT (SECOND) OF TORTS AND THE CALIFORNIA TORT CLAIMS ACT.

32. DEFENDANT "W." "GIBSON" MADE THE CRITICAL CONCESSION TO ORDER HER SUBORDINATES TO WATER DOWN THE DAYROOM WITH THE "EMERGENCY FIRE-HOSE" AN UNCONSTITUTIONAL AND NEGLIGENCE PROCEDURE AND CONDUCT. NEGLECTING HER DUTY TO PROTECT FROM UNREASONABLE RISK, KNOWING THAT PRISONERS ARE FREQUENTLY GOING "MAN DOWN" AND ESCORTED OUT THE SECTION. AS A PROXIMATE CAUSE I SLIPED ON A PUDDLE AND SUFFERED PERMANENT, PAINFULL INJURIES TO MY LEFT SHOULDER/ARM, LOWER BACK AND BOTH WRIST.

33. DEFENDANT "CDW" "SANTOR" is RESPONSIBLE FOR CONCEDING TO WARDEN'S ORDER, KNOWING THE DOCUMENTED CONSTANT "MAN DOWNS" ESCORTS AND FOR APPLYING AN UNREASONABLE AND RECKLESS PROCEDURE TO CLEAN A DAYROOM, ALLOWING HIS SUBORDINATES TO CONVEY THE USAGE OF AN "EMERGENCY FIRE-HOSE" TO CLEAN THE DAYROOMS. THAT WAS THE PROXIMATE CAUSE OF MY PERMANENT PAINFULL INJURIES.

33. DEFENDANT "AW" "JOHNSON" IS RESPONSIBLE FOR CONCEDING TO WARDEN ORDER'S, KNOWING THE DOCUMENTED CONSTANT "MAN DOWNS" ESCORTS AND FOR APPLYING AN UNREASONABLE AND RECKLESS PROCEDURE TO CLEAN A DAYROOM, ALLOWING HIS SUBORDINATES TO CONVEY THE USAGE OF AN "EMERGENCY FIRE-HOSE" TO CLEAN THE DAYROOM'S. THAT WAS THE PROXIMATE CAUSE OF MY INJURIES.

34. DEFENDANT "A.W." "SEXTON" IS RESPONSIBLE FOR CONCEDING TO WARDEN ORDERS, KNOWING THE DOCUMENTED CONSTANT "MAN DOWNS" ESCORTS AND FOR APPLYING AN UNREASONABLE AND RECKLESS PROCEDURE TO CLEAN A DAYROOM, ALLOWING HIS SUBORDINATES TO CONVEY THEY USAGE OF AN "EMERGENCY FIRE-HOSE" TO WATER HOSE THE DAYROOM'S. THAT WAS THE PROXIMATE CAUSE OF MY INJURIES.

35. DEFENDANT "A.W." "LAMBERT" IS RESPONSIBLE FOR CONCEDING TO WARDEN ORDER'S, KNOWING THE DOCUMENTED CONSTANT "MAN DOWNS" ESCORTS AND FOR APPLYING AN UNCONSTITUTIONAL AND NEGLECTFULNESS PROCEDURE TO CLEAN A DAYROOM, ALLOWING HIS SUBORDINATES TO CONVEY THE USAGE OF AN "EMERGENCY FIRE HOSE" TO WATER DOWN THE DAYROOMS. THAT WAS THE PROXIMATE CAUSE OF MY INJURIES.

36. DEFENDANT "CAPT." "BROOMFIELD" IS RESPONSIBLE FOR EXECUTING HIS SUPERVISOR'S ORDER'S AND CONVEYING TO HIS SUBORDINATES WARDEN ORDER'S IN USING A NON-PROCEDURE METHOD OF CLEANING THE DAYROOM BY THE USAGE OF A FIRE-HOSE TO BURST DOWN THE DAYROOM'S. THAT WAS NOT PROPERLY CLEANED AND WAS THE PROXIMATE CAUSE OF MY PERMANENT INJURIES.

37. DEFENDANT "CAPT." "MORENO" IS RESPONSIBLE FOR EXECUTING HIS SUPERVISOR ORDERS AND CONCEDING TO HIS SUBORDINATES, WARDEN ORDER'S IN USING A NON-PROCEDURE METHOD OF CLEANING DAYROOM'S, BY THE USAGE OF A "FIRE-HOSE TO BURST AWAY THE DAYROOMS. THAT WAS NOT PROPERLY CLEANED AND WAS THE PROXIMATE CAUSE OF MY PERMANENT INJURIES.

38. DEFENDANT "L.T." "MUÑOZ" WERE AWARE OF THE CONSTANT "MAN DOWN" ESCORTS OF PRISONERS BY STAFF AND YET HE CONCEDED TO AN UNUSUAL AND HAZARDOUS METHOD IN CLEANING THE DAYROOM'S. BY ALLOWING HIS

SUBORDINATES TO USE A "FIRE-HOSE" TO WATER DOWN THE DAYROOM'S THAT LEFT PERVADED PUDDLES AND WAS THE PROXIMATE CAUSE OF MY INJURIES.

39. DEFENDANT "L.T." "CALLOW" WERE AWARE OF THE CONSTANT "MAN DOWN" ESCORTS OF PRISONERS BY STAFF. HE CONCEDED TO AN UNUSUAL AND HAZARDOUS METHOD IN CLEANING THE DAYROOMS. BY ALLOWING HIS SUBORDINATES TO USE A "FIRE-HOSE" TO WATER DOWN THE DAYROOMS THAT LEFT PERVADED PUDDLES AND WERE THE PROXIMATE CAUSE OF MY INJURIES.

40. DEFENDANT "L.T." "CRUZ" WERE AWARE OF THE CONSTANT "MAN DOWNS" ESCORTS OF PRISONERS BY STAFF. HE CONCEDED TO AN UNUSUAL AND HAZARDOUS METHOD IN CLEANING THE DAYROOMS; BY ALLOWING HIS SUBORDINATES TO USE A "FIRE-HOSE" TO WATER DOWN THE DAYROOM'S, THAT LEFT PERVADED PUDDLES AND WERE THE PROXIMATE CAUSE OF MY INJURIES.

41. DEFENDANT "SGT" "BUENO" WAS THE SUPERVISOR OF "4A-2 block" WHO INSTRUCTED THE "FLOOR STAFF" TO USE THE "FIRE HOSE" AND BURST THE DAYROOM'S FLOOR AS WARDEN ORDER'S. HE WAS WELL AWARE THE CONSTANT "MAN DOWN'S" AND THE UNUSUAL AND HAZARDOUS USAGE OF A FIRE-HOSE, AND YET ALLOWED HIS SUBORDINATES TO PROCEED, AND WAS THE PROXIMATE CAUSE OF MY INJURIES.

42. DEFENDANT "SGT" "HERNANDEZ" WAS THE SUPERVISOR OF "4A-2 block" WHO INSTRUCTED WARDEN ORDER'S TO HIS SUBORDINATES. IN THE USAGE OF THE "FIRE-HOSE" A RECKLESS AND NON-PROCEDURE METHOD OF CLEANING THAT LEFT PERVADED PUDDLES THAT WERE THE PROXIMATE CAUSE OF MY INJURIES

43. DEFENDANT "SGT." "PETERSON" WAS THE SUPERVISOR OF "4A-2 BLOCK" WHO CONCEDED WARDEN ORDER'S TO USE THE "FIRE-HOSE" TO BURST THE DAYROOM'S. ALLOWING HIS SUBORDINATES TO APPLY AN UNUSUAL AND RECKLESS METHOD IN CLEANING THE DAYROOMS, WHICH LEFT PERVASIVE PUDDLES THAT WERE THE PROXIMATE CAUSE OF MY INJURIES.

44. DEFENDANT "SGT." "WELCH" WAS A "FLOOR STAFF" DURING THIS HE ESCORTED ME TO SEE THE NURSE PRIOR TO MY INJURIES. I WAS GIVEN FORMULA DRINKS SINCE I DECIDED TO RE-FEED. HE ESCORTED ME TROUGH THE PUDDLES. AND NOTICED THE OBVIOUS RISKS. AND YET CONCEDED TO APPLY AN UNUSUAL METHOD IN CLEANING, WHICH LEFT PERVADED PUDDLES THAT WERE THE PROXIMATE CAUSE OF MY INJURIES.

45. DEFENDANT "1/W-SGT-DOE", WHICH WAS THE "SGT" THAT SUPERVISE "4A-2 block" DURING THE NIGHT-SHIFT. WERE AS HE COULD HAVE ORDER HIS SUBORDINATES TO ABATE THE OBVIOUS RISK OF SERIOUS HARM; THE PERVADED PUDDLES THAT WERE THE PROXIMATE CAUSE OF MY INJURIES.

46. DEFENDANT(S) "1/W-C/O(S)-DOE(S)" WERE THE NIGHT-SHIFT, THAT SEEN THE OBVIOUS FORESEEABLE THREAT OF SERIOUS HARM WITH ALL THE PUDDLES. THEY HAD THE OBLIGATION TO ABATE THAT THREAT AND YET THEY DID NOT AND WAS THE PROXIMATE CAUSE OF MY INJURIES.

47. DEFENDANT(S) "3/W-C/O(S)-DOE(S)" WERE THE AFTERNOON-SHIFT THEY SEEN THE THREATNING PUDDLES AND YET DID NOT TAKE REASONABLE APPROACH TO ABATE THE THREAT. THAT WAS THE PROXIMATE CAUSE OF MY INJURIES.

48. DEFENDANT "3/W-SGT(S)-DOE(S)" WAS THE "SGT(S)" THAT SUPERVISE "4A-2 block" HE COULD HAVE ORDERED HIS SUBORDINATES TO DRY AND SANITIZE THE VISABLE PUDDLES THAT PERVADED THE DAYROOMS, TO ELIMINATE A FORESEEABLE SERIOUS THREAT. THAT WAS THE PROXIMATE CAUSE OF MY INJURIES.

49. DEFENDANT "MENDEZ" ASSISTED "CALDWELL" TO BURST THE DAYROOM DOWN WITH THE FIRE-HOSE. A NON-PROCEDURE METHOD. THEY DID NOT USE PROPERLY SANITIZ TOOLS TO CLEAN AND DID NOT CLEAN ADEQUATELY THEY LEFT PERVADED PUDDLES. THAT WAS THE PROXIMATE CAUSE OF MY INJURIES.

50. DEFENDANT "CALDWELL" ASSISTED "MENDEZ" TO WATER DOWN THE DAYROOM WITH AN UNSANITARY "FIRE-HOSE" THAT NEVER BEEN USE, THAT WAS AN UNUSUAL AND RECKLESS METHOD IN CLEANING, WHICH THEY DID NOT

SANITIZE AND AIR DRYED THE PUDDLES, THAT WERE THE PROXIMATE CAUSE OF MY INJURIES.

51. DEFENDANT "TOMLIN" WAS IN THE POSITION TO ASSIST "CALDWELL" AND "MENDEZ" TO CLEAN OR ABATE THE VISABLE PUDDLES, SINCE THEY WERE THE ONCE WHOM ESCORT THE PRISONERS AND THUS HAD TO GO TROUGH THE PUDDLES. HIS REFUSAL TO PROPERLY CLEAN, LEFT A FORESEEABLE THREAT OF SERIOUS HARM.

52. DEFENDANT "BERGE" WAS IN THE POSITION TO ALSO ASSIST "CALDWELL" AND "MENDEZ" ADEQUATE SANITIZE AND DRY THE PUDDLES. BUT CHOSED TO LEAVE AN OBVIOUS RISK OF SERIOUS HARM. ALTHOUGH HE HAD THE DUTY TO DO SO.

53. DEFENDANT "ESPINOZA" WAS IN THE POSITION TO ALSO ASSIST AND DO HIS DUTY TO ADEQUATELY SANITIZE AND DRY THE PUDDLES. BUT DID NOT WANT TO AND LEFT AN OBVIOUS THREAT OF PUDDLES KNOWINGLY, THAT ESCORTS WERE CONSTANT.

54. DEFENDANT "MALDONADO" WAS IN THE "CONTROL TOWER" HE WAS RESPONSIBLE FOR OPENING CELL DOORS WHEN IT WAS EVIDENT OF THE PERVADED PUDDLES POSING A SERIOUS RISK TO PRISONERS. AND DID NOTHING TO ABATE THAT THREAT.

## PRAYER FOR RELIEF

WHEREFORE, I DEMAND A JUDGEMENT IN MY FAVOR AGAINST DEFENDANT'S JOINTLY AND SEVERALLY AS FOLLOWS;

A. ENJOINING THE DEFENDANTS FROM REFUSING TO ADEQUATE AND PROPERLY MOOP (I.e. WITH GERMA-CIDE, ETC..) AND DRY ALL THE DAYROOM'S AND TOP TIERS OF THE SECURITY HOUSING UNIT ("S.H.U.") AT CORCORAN AND TO MOOP AND DRY THREE TIMES A WEEK SO THAT THE DRIED UP FECAL MATTER, FLOOR DEBRIS, ETC.. BE ADEQUATE CLEAN AND SANITIZED;

B. ENJOINING THE DEFENDANTS FROM REFUSING TO REMOVE ALL OF THE TIER AND FLOOR DRAIN COVERS. SO THAT THE DRIED UP FACAL MATTER, ETC... CAN BE REMOVED AND THE DRAIN COVERS PROPERLY CLEANED AND SANITIZED;

C. DECLARING THAT CONVICTED STATE PRISONER HAVE THE ABSOLUTE RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT;

D. DECLARING THAT CONVICTED STATE PRISONER HAVE THE ABSOLUTE RIGHT TO BE FREE FROM GROSS NEGLEGENCE UNDER THE CALIFORNIA TORT CLAIM ACT;

E. ON THE FIRST CLAIMS; AN AWARD OF COMPENSATORY DAMAGES, IN THE AMOUNT OF $250,000.00 TO COMPENSATE FOR PHYSICAL AND SPECIAL DAMAGES;

F. AN AWARD OF PRESUMED DAMAGES IN A REASONABLE AMOUNT TO BE DETERMINED BY A JURY;

G. AN AWARD OF PUNITIVE DAMAGES IN THE AMOUNT OF $5,000.00 SEVERALLY TO PUNISH THE DEFENDANTS AND DETER OTHERS FROM ENGAGING IN THE SAME OR SIMILAR ACTS OF MISCONDUCT;

H. ON THE SECOND CLAIMS; AN AWARD OF COMPANSATORY DAMAGES IN THE AMOUNT OF $250,000.00 TO COMPENSATE FOR PHYSICAL AND SPECIAL DAMAGES.

I. AN AWARD OF PUNITIVE DAMAGES IN THE AMOUNT OF $5,000.00 SEVERALLY TO PUNISH THE DEFENDANTS AND DETER OTHERS FROM ENGAGING IN THE SAME OR SIMILAR ACTS OF NEGLEGENCE;

J. ON THE FIRST AND SECOND CLAIM AN AWARD OF NOMINAL DAMAGES IN THE AMOUNT OF $1.00;

K. ANY OTHER OR FURTHER RELIEF THE COURT, MAY DEEM JUST OR PROPER.

DATE: 10-19-15

RESPECTFULLY SUBMITTED,

[signature]

VICTOR DE LA CRUZ

///

///

///

VERIFICATION

PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY OF THE LAWS OF THE UNITED STATES OF AMERICA. THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT. EXECUTED ON THIS 19TH DAY OF OCTOBER, 2015. AT CORCORAN CALIFORNIA.

/S/ [signature]

EASTERN DISTRICT OF CALIFORNIA

VICTOR DE LA CRUZ

v.

C. GIPSON et. al

Case Number: 1:14-cv-02012-DLB

PROOF OF SERVICE

I hereby certify that on 10.19.15, I served a copy of the attached PLAINTIFF'S VERIFIED AMEND. 1983/TORT CLAIM, by placing a copy in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the United States Mail at

CORCORAN STATE PRISON:

(List Name and Address of Each Defendant or Attorney Served)

ATT: CLERK
UNITED STATES DISTRICT COURT
2500 TULARE ST. ROOM 1501
FRESNO CA 93721

I declare under penalty of perjury that the foregoing is true and correct.

(Signature of Person Completing Service)